UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCHILDER DAIRY. LLC, An Idaho Limited Liability Company,<br><br>        Plaintiff,<br><br>    v.<br><br>DELAVAL, INC., a Delaware Corporation,<br><br>        Defendant. | Case No. CV 09-531-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S ORAL MOTION FOR DIRECTED VERDICT** |

Currently pending before the Court is Defendant DeLaval, Inc.'s ("DeLaval") Motion for Directed Verdict, presented orally at the close of Plaintiff Schilder Dairy, LLC's ("Schilder") case-in-chief on July 8, 2011. Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Schilder's Complaint asserts six causes of action: (1) Breach of Express Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Breach of the Implied Warranty of Workmanlike Performance; (4) Breach of the Implied Warranty of Merchantability; (5) Breach of the Implied Warranty of Fitness for a Particular Purpose; and (6) Negligence. *See* Compl. at ¶¶ 29-58 (Docket No. 1, Att. 3). Under each theory or recovery, Schilder has the burden of establishing a causal relationship between DeLaval's alleged conduct and Schilder's corresponding injury. Through its Motion, DeLaval argues that, as the only witness offered to

**MEMORANDUM DECISION AND ORDER - 1**

link the conduct complained-of to the damages Schilder now seeks, Dr. Martin R. Lee fails to establish the causation needed to support any of Schilder's claims. Specifically, DeLaval claims that Dr. Lee's testimony in these respects is rank speculation when recognizing that his opinions vis à vis DeLaval's milking system are incapable of support (and, thus, evidentiary heft), given Dr. Lee's failure to actually confirm through testing his theory that a faulty butterfly valve ultimately led to the mastitis outbreak at the Schilder dairies.

## II. DISCUSSION

**A.     Standard**

Although DeLaval does not cite to the legal authority permitting the Court, in a bench trial, to grant the requested relief, the undersigned nonetheless considers DeLaval's Motion within the framework of FRCP 52(c), providing:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

*See* Fed. R. Civ. P. 52(c). The Rule therefore allows a district court, in its discretion, to enter partial findings against a party on an issue at the close of that parties' evidence, or reserve the ruling until the close of all of the evidence on the issue. *See Adams v. U.S.*, 2009 WL 2515841, *1 (D. Idaho 2009) (citing *Reigel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 793 n. 19 (5th Cir. 1975)). Accordingly, a court has three options in considering a FRCP 52(c) motion – it may reserve ruling until the close of all evidence, grant the motion and enter findings of fact and conclusions of law accordingly, or deny the motion. *See Adams*, 2009 WL 2515841 at *1.

**MEMORANDUM DECISION AND ORDER - 2**

This Court has cited, with approval, Seventh Circuit case law holding that a court's decision to deny a FRCP 52(c) motion does not preclude the court from later dismissing the nonmovant's case:

> A denial of defendant's motion amounts to nothing more than a refusal to enter judgment at that time. At most it constitute[s] a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it [does] not preclude the trial judge from later making considered findings and determinations not altogether consistent with his prior tentative ruling.

*See id.* (citing *Armour Research Found. of Illinois Inst. of Tech. v. Chicago, Rock Island & Pacific R.R. Co.*, 311 F.2d 493, 494 (7th Cir. 1963) (concerning former FRCP 41(b), precursor to present FRCP 52(c)).[1]

**B.     Analysis**

It is true that, during his testimony, Dr. Lee characterized his theory of the butterfly valve's operation as speculation. However, in the Court's mind, this admission, by itself, does not require the exclusion of Dr. Lee's opinions outright under a *Daubert*-type analysis. Instead, the Court recognizes that a qualified expert's deductive reasoning analysis frequently culminates in findings that cannot be said to be 100% certain, given the manner in which such opinions are arrived upon – in short, the process of elimination. Again, this fact does not render Dr. Lee's testimony improper and/or incapable of consideration by the fact-finder – the Court – here; instead, as discussed in the Court's July 5, 2011 Order (Docket No. 51), this reality goes to the

---

[1] In an unpublished decision, the Ninth Circuit cited *Armour Research* with approval and also noted that "the case law developed under FRCP 41(b) between its promulgation in 1938 and the 1991 amendments to FRCP 41(b) and FRCP 52(c) is applicable to FRCP 52(c)." *See In re Sovereign Partners*, 1997 WL 160279, **3-4 (9th Cir. 1997) (citing Wright & Miller, Federal Practice and Procedure: Civil 2d § 2573.1 at 494 (1995)).

**MEMORANDUM DECISION AND ORDER - 3**

weight of Dr. Lee's testimony and, likewise, is subject to rebuttal by DeLaval's own experts' testimony.

Additionally, as to the actual weight lent to Dr. Lee's testimony thus far, the Court cannot conclude that it fails to satisfy Schilder's burden of proving causation. The fact of other potential causes of the mastitis outbreak or, even, conflicting theories among Schilder's own experts, does not erase Dr. Lee's expert opinion, the underlying basis for his opinion, or the other evidence that Schilder puts forth to argue that the source of the high Somatic Cell Count measurements is/was something independent of the dairy's internal milking practices. As a result, DeLaval's Motion must be denied. This is not to say that the Court adopts Dr. Lee's testimony or that DeLaval cannot later prevail at the conclusion of trial. Rather, the Court finds only that the quantum of Schilder's burden of proof on the issue of causation – as much or as little as the case may be – is such that Schilder's claims remain at this time.

### III.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT DeLaval's oral Motion for Directed Verdict is DENIED.

DATED: **July 11, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 4**